UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
VILLAGE GREEN AT SAYVILLE, LLC,

                  Plaintiff,

- against –

THE TOWN OF ISLIP, THE TOWN BOARD
OF THE TOWN OF ISLIP, THE PLANNING
BOARD OF THE TOWN OF ISLIP, ANGIE
M. CARPENTER, individually and in her
official capacity as Member of the Town Board
of the Town of Islip, STEVEN J.
FLOTTERON, individually and in his official
capacity as Member of the Town Board of the
Town of Islip, TRISH BERGIN
WEICHBRODT, individually and in her
official capacity as Member of the Town Board
of the Town of Islip, JOHN C. COCHRANE,
JR., individually and in his official capacity as
Member of the Town Board of the Town of
Islip, MARY KATE MULLEN, individually
and in her official capacity as Member of the
Town Board of the Town of Islip, EDWARD
FRIEDLAND, individually and in his official
capacity as Member of the Planning Board of
the Town of Islip, KEVIN BROWN,
individually and in his official capacity as
Member of the Planning Board of the Town of
Islip, ANTHONY MUSUMECI, individually
and in his official capacity as Member of the
Planning Board of the Town of Islip, JOSEPH
DE VINCENT, individually and in his official
capacity as Member of the Planning Board of
the Town of Islip, DONALD FIORE,
individually and in his official capacity as
Member of the Planning Board of the Town of
Islip, DANIEL DELUCA, individually and in
his official capacity as Member of the Planning
Board of the Town of Islip, and MICHAEL
KENNEDY, individually and in his official
capacity as Member of the Planning Board of

**MEMORANDUM AND ORDER**
2:17-CV-7391 (DRH)(ARL)

the Town of Islip,

Defendants.

-------------------------------------------------------X

**APPEARANCES**

**LAW OFFICES OF MARK A. CUTHBERTSON**
Attorneys for Plaintiff
434 New York Ave.
Huntington, NY 11743
By:    Mark A. Cutherbertson, Esq.
       Matthew Joseph DeLuca, Esq.

**SINNREICH & KOSAKOFF LLP**
Attorneys for Defendants
267 Carleton Ave.
Central Islip, NY 11722
By:    Timothy F. Hill, Esq.
       Lisa Angela Perillo, Esq.
       Vincent J. Messina, Esq.

**ISLIP TOWN ATTORNEY'S OFFICE**
Attorney for Defendant
655 Main St.
Islip, NY 11751
By:    John Ryan DiCioccio, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

Plaintiff Village Green at Sayville, LLC ("Plaintiff") brought the instant action against

Defendants the Town of Islip ("Town"), the Town Board of the Town Of Islip ("Town Board"),

the Planning Board of the Town of Islip ("Planning Board"), Angie M. Carpenter, individually

and in her official capacity as Member of the Town Board, Steven J. Flotteron, individually and

in his official capacity as Member of the Town Board, Trish Bergin Weichbrodt, individually

and in her official capacity as Member of the Town Board, John C. Cochrane, Jr., individually

and in his official capacity as Member of the Town Board, Mary Kate Mullen, individually and

in her official capacity as Member of the Town Board, Edward Friedland, individually and in his official capacity as Member of the Planning Board, Kevin Brown, individually and in his official capacity as Member of the Planning Board, Anthony Musumeci, individually and in his official capacity as Member of the Planning Board, Joseph De Vincent, individually and in his official capacity as Member of the Planning Board, Donald Fiore, individually and in his official capacity as Member of the Planning Board, Daniel Deluca, individually and in his official capacity as Member of the Planning Board, and Michael Kennedy, individually and in his official capacity as Member of the Planning Board (together with the other individuals, the "Individual Defendants;" collectively with the Town, the Town Board, and the Planning Board, "Defendants"). Plaintiff brings claims for violations of the Fair Housing Act, 42 U.S.C. § 3601 et seq. ("FHA"), as well as 42 U.S.C. §§ 1981, 1982, 1983, and 2000d, the Fourteenth Amendment of the United States Constitution, and the New York State Human Rights Law ("NYSHRL") N.Y. Exec. L. § 296. Plaintiff asserts that Defendants acted unlawfully by "disallowing, delaying, blocking, and otherwise interfering with Plaintiff's attempts to construct a housing development[.]" (Am. Compl. [ECF No. 19] ¶ 1.)

Presently before the Court is Defendants' motion to dismiss the Complaint pursuant to Fed. R. Civ. P. ("Rule") 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons discussed below, the motion to dismiss is granted and all claims are dismissed.

## BACKGROUND

The following relevant facts come from the Amended Complaint ("Am. Compl.") and are assumed true for purposes of the motions to dismiss.

Plaintiff is the owner of certain real property located in Sayville, New York within the Town of Islip in Suffolk County, New York (the "Property"). (Am Compl. ¶¶ 1, 3.) Plaintiff intended to build a housing project on the Property. In 2006, the Town Board granted Plaintiff's application to re-zone the Property from Business One to Residence CA. (*Id.*) This re-zoning was conditioned on Plaintiff accepting certain covenants and restrictions ("C&Rs") including, among other things, that the permitted condominiums would be owned by those dwelling in the units. (*Id.* ¶ 4.) In other words, the property could not be a rental property. A Residence CA zoning district generally allows rental properties as a matter of right. (*Id.* ¶ 12.) The C&Rs also required connection to an off-site sanitary treatment plant ("STP"). (*Id.* ¶ 4.)

Plaintiff alleges that connection to an STP "became impossible, in part due to the Town and local school district's refusal to grant a required easement and the Town's subsequent approval of a project that utilized the remaining capacity of the only off-site STP to which Plaintiff could connect." (*Id.*) As a result, in May 2014, Plaintiff filed an application with the Town Board to modify the C&Rs to eliminate the covenants requiring condominiums owned by the unit dwellers and an off-site STP. (*Id.* ¶ 5.) The Town Board adopted a resolution to refer Plaintiff's application to the Planning Board for a report thereon. (*Id.* ¶ 48.) The Planning Board scheduled a public hearing on the application for November 13, 2014, at which a "vocal and hostile crowd" made racist comments such as "we are not talking about what's on the outside, we're talking about what might be on the inside." (*Id.* ¶ 51.) The Planning Board did not consider a resolution recommending approval of the application until nearly 18 months after the initial public hearing, a delay out of sync with the normal procedure. (*Id.* ¶ 48[1] at 15.) On May 4, 2016, the Planning Department staff gave the Planning Board a report that explained that

---

[1] The paragraph numbers repeat on page 15 of the Amended Complaint.

apartments were appropriate for the Property and that concerns expressed by the opposition concerning traffic impacts, wetlands, and diminution of property values had all been satisfactorily addressed by Plaintiff. (*Id.* ¶ 49 at 15–16.) The Planning Board ultimately failed to pass the motion; the Vice Chairman recused himself and the vote was a 3-3 tie. (*Id.* ¶ 53.) The vote was deemed a non-action. (*Id.*)

Due to this non-vote, Plaintiff further modified its application to reduce its application to amend the C&R from the originally proposed 64 rental units down to 59 units, with half of those being age-restricted. (*Id.* ¶ 54.) The Town Board held its first meeting on Plaintiff's application on June 30, 2016. (*Id.* ¶ 55.) The meeting was well-attended by similarly hostile Town residents. (*Id.* ¶¶ 55–56.)

"On November 3, 2016, the Plaintiff's application was placed on the Planning Board agenda as a recommendation item." (*Id.* ¶ 59.) Consideration of the application was adjourned on that date "because, upon information and belief, one of the application's most outspoken opponents . . . was out of town." (*Id.*) On November 17, 2016, the Town Board placed Plaintiff's application on the agenda for a vote. (*Id.* ¶ 60.) At the meeting, the Planning Department staff and Plaintiff's counsel made presentations in support of Plaintiff's application, following which the Town Supervisor made a motion to approve Plaintiff's application. (*Id.* ¶ 63.) No other Town Board member seconded the motion, and no vote was held. (*Id.*) Plaintiff claims that the Town "caved into hostile opposition from Sayville residents." (*Id.* ¶ 6.) Apparently, "the hostility was such that the Town Supervisor had to threaten to suspend the meeting." (*Id.* ¶ 7.) During the meeting, several Town residents made "comments evidencing animus to [m]inorities." (*Id.*) For example, one resident stated that

> We don't know what type of element is going to be moving into these apartments and what they're going to leave behind . . . [whether there is]

> going to be any drug activity, crime, prostitution, murder . . . . It's going to
> be the murder capital of Suffolk.

(*Id.*)  Certain residents even threatened political retaliation against the Town Board members if they approved Plaintiff's application.  (*Id.* ¶ 58.)

That same night, the Town Board unanimously approved the application of Renzon Concepcion ("Renzon") "to modify a similar C&R that required 30 condominium units to instead allow 44 rental apartments."  (*Id.* 71.)  Renzon, like Plaintiff, was a developer that owned undeveloped real property in the Town that was zoned Residential CA, subject to a C&R that required condominiums and prohibited apartments.  (*Id.* ¶ 10.)  Plaintiff believes that the "key difference" between Plaintiff's development and Renzon's development is that the latter is located in the hamlet of Brentwood, which has a predominantly minority population.  (*Id.* ¶¶ 10–11.)

A month after the Town Board meeting, Plaintiff's attorney, Joseph Buzzell, had a conversation with the Town Attorney, John DiCioccio, who said that "the Town is treating the failed motion to approve as a denial of the [Plaintiff's] application, and that no further proceedings before the Town Board, Planning Board, or any other Town Agency would be held."  (*Id.* ¶ 67.)  Plaintiff's attorney then sent Mr. DiCioccio a letter summarizing their conversation and asking Mr. DiCioccio to send a written response if he disputed that he had made such statements.  (*Id.* ¶¶ 67–68.)  Mr. DiCioccio never sent a response.  (*Id.*)

In December 2016, Plaintiff commenced an Article 78 action against Defendants in state court asking the court to: (1) declare that the covenants are illegal and unenforceable; (2) order the Town to review and approve Plaintiff's application and site plan; and (3) issue the necessary

building permits.  Plaintiff also asserts a claim for a temporary taking.[2]  Based on a brief review

of the state court docket, it appears that several trial dates have been adjourned but the matter is

now scheduled for trial in November 2019.

Plaintiff brought the instant action on December 19, 2017, and filed the Amended

Complaint on August 7, 2018.  The Amended Complaint sets forth seven causes of action for

violations of: (1) the FHA; (2) 42 U.S.C. § 1981; (3) 42 U.S.C. § 1982; (4) 42 U.S.C. § 1983 and

the Equal Protection Clause of the Fourteenth Amendment; (5) NYSHRL § 296(6); (6)

substantive due process under the Fourteenth Amendment; and (7) the takings clause of the Fifth

and Fourteenth Amendments.

## DISCUSSION

I.    *Motion to Dismiss Pursuant to Rule 12(b)(1) for Lack of Subject Matter Jurisdiction*

A.  Rule 12(b)(1) Legal Standard

A case may be properly dismissed for lack of subject matter jurisdiction pursuant to Rule

12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it."

*Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000).  "In contrast to the standard for a

motion to dismiss for failure to state a claim under Rule 12(b)(6), a 'plaintiff asserting subject

matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'"

*MacPherson v. State St. Bank & Trust Co.*, 452 F. Supp. 2d 133, 136 (E.D.N.Y. 2006) (quoting

*Reserve Solutions Inc. v. Vernaglia*, 438 F. Supp. 2d 280, 286 (S.D.N.Y. 2006)), *aff'd*, 273 F.

App'x 61 (2d Cir. 2008); *accord Tomaino v. United States*, 2010 WL 1005896, at *1 (E.D.N.Y.

Mar. 16, 2010).  "In resolving a motion to dismiss for lack of subject matter jurisdiction, the

---

[2] Although Plaintiff does not include the state court action in the Amended Complaint, the Court can take judicial notice of the claims in the state court complaint, not for the truth of the matters asserted in them, "but rather to establish the fact of such litigation and related filings."  *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions." *Cunningham v. Bank of New York Mellon, N.A.*, 2015 WL 4101839, * 1 (E.D.N.Y. July 8, 2015) (citing *Morrison v. Nat'l Australia Bank, Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)).

### B. The Parties' Arguments

Defendants assert that the Court lacks subject matter jurisdiction because Plaintiff does not have standing as the claims are not ripe. Defendants advance two arguments in support of their motion to dismiss pursuant to Rule 12(b)(1): (1) there has been no taking as there has been no final decision; and (2) even if there had been a final determination, Plaintiff cannot assert unconstitutional deprivation of property because Plaintiff can still make reasonable use of the Property. Plaintiff responds that the Court has subject matter jurisdiction because this action arises from Defendants' discriminatory treatment of minorities through land use restrictions.

### C. The Motion to Dismiss Pursuant to Rule 12(b)(1) is Granted in Part and Denied in Part

#### 1. Standing Legal Standard

"Standing is a federal jurisdictional question 'determining the power of the court to entertain the suit.'" *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir.2010) (quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). "'[A] plaintiff must demonstrate standing for each claim and form of relief sought.'" *Id.* (quoting *Baur v. Veneman*, 352 F.3d 625, 642 n. 15 (2d Cir.2003)). There are three Article III standing requirements: (1) the plaintiff must have "suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *John v. Whole Foods Market Group, Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). As to the first element, an injury in fact "consists of an invasion of a legally protected interest that is

concrete and particularized and actual or imminent, not conjectural or hypothetical.'" *John*, 858

F.3d at 736 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48, 194 L.Ed.2d 635 (2016)).

"Each element of standing 'must be supported . . . with the manner and degree of evidence

required at the successive stages of the litigation,' and at the pleading stage, 'general factual

allegation of injury resulting from the defendant's conduct may suffice.'" *John*, 858 F.3d at 736

(quoting *Lujan*, 504 U.S. at 561).[3]

### 2.   Ripeness Legal Standard

The doctrine of ripeness is closely related to the doctrine of standing.  "The ripeness

doctrine is drawn both from Article III limitations on judicial power and from prudential reasons

for refusing to exercise jurisdiction." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S.

803, 808 (2003).  The Second Circuit has explained that "the best way to think of constitutional

ripeness is as a specific application of the actual injury aspect of Article III standing . . . .

Constitutional ripeness, in other words, is really just about the first *Lujan* factor[,]" whether a

plaintiff's injury is concrete, particularized, and actual or imminent.  *Nat'l Org. for Marriage,*

*Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013).  "The ripeness requirement prevents a federal

court from entangling itself in abstract disagreements over matters that are premature for review

because the injury is merely speculative and may never occur." *Dougherty v. Town of N.*

*Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir. 2002).

---

[3] On June 28, 2019, the Court entered an Order directing the Parties to explain their positions as to the
impact of the Supreme Court's recent decision in *Knick v. Township of Scott, Penn.*, 139 S. Ct. 2162, 204
L.Ed.2d 558 (2019) on the pending motion.  The *Knick* decision concerns standing in a takings action.  As
Defendants noted in their response, *Knick* specifically provides that the decision "does not question the
validity of [the] finality requirement, which is not at issue[.]" 139 S. Ct. at 2169.  Rather, the *Knick*
decision overrules the requirement established by *Williamson County Reg'l Planning Comm'n v.*
*Hamilton Bank of Johnson City*, 473 U.S. 172 (1985) that a plaintiff must exhaust state remedies for
reimbursement.  Here, Defendants' argument regarding standing is premised upon finality, and not
exhaustion, so *Knick* does not factor into this Court's decision.

3. Standing in the Land-Use Context

    a. Legal Standard

To establish that a claim is ripe in the land-use context, and especially where a property owner challenges a local zoning determination, "the Court must apply the first prong of the analysis the Supreme Court articulated in *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 105 S. Ct. 3108, 87 L.Ed.2d 126 (1985)." *Islamic Cmty. Ctr. dor Mid Westchester v. City of Yonkers Landmark Pres. Bd.*, 258 F. Supp. 3d 405, 416 (S.D.N.Y. 2017), *aff'd*, 742 F. App'x 521 (2d Cir. 2018); *see also Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 247 (2d Cir. 2005) (explaining that the "'prong-two ripeness' test" only applies to takings challenges); *see also Knick*, 139 S. Ct. at 2167, 204 L.Ed.2d 558 (doing away with the second prong in *Williamson* and holding that a property owner who has "suffered a violation of his Fifth Amendment rights when the government takes his property without just compensation . . . may bring his claim in federal court under § 1983 at that time"). The first prong of the *Williamson County* test requires that a plaintiff plead facts showing that "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cty.*, 473 U.S. at 186. This "final-decision requirement helps distinguish between those cases in which a plaintiff has suffered a 'concrete and particularized,' 'actual or imminent' injury, and those in which the injury is 'merely speculative and may never occur, depending on the final administrative resolution.'" *Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118, 122 (2d Cir. 2014) (quoting *Dougherty*, 282 F.3d at 90). "In other words, a non-final decision on how a parcel of land may be used does not ordinarily give rise to an injury that is sufficiently concrete and particularized to satisfy Article III." *Sunrise Detox V, LLC*, 769 F.2d at 122.

To meet the final-decision requirement, the plaintiff must "obtain a final, definitive position as to the application of the relevant zoning law to the property from the municipal entity responsible for those laws." *Islamic Cmty.*, 258 F. Supp. 3d at 416 (quoting *Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona*, 915 F. Supp. 2d 574, 597 (S.D.N.Y. 2013) (internal quotation marks omitted). As such, "'plaintiff cannot seek federal court review of a zoning ordinance or provision until it has submitted at least one meaningful application for a variance' from the restrictions of the land-use laws." *Id.* However, whether an action is final is "conceptually distinct" from whether administrative remedies have been exhausted. *See Williamson*, 473 U.S. at 193, 87 L.Ed.2d 126. "While the policies underlying the two concepts often overlap, the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate." *Id.*

Finally, "[a]lthough the ripeness test in *Williamson* involved only a takings claim, the ripeness requirement of *Williamson* has also been extended to equal protection and due process claims asserted in the context of various land use challenges." *Homefront Org., Inc. v. Motz*, 570 F. Supp. 2d 398, 405 (E.D.N.Y. 2008) (citing *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 88–89 (2d Cir. 2002) (applying ripeness test to equal protection and due process claims); *Southview Assocs., Ltd. v. Bongartz*, 980 F.2d 84, 96–97 (2d Cir. 1992) (applying ripeness test to substantive due process claims)).

Here, Plaintiff concedes in the Amended Complaint that the Town Board never voted on their application at the November 2016 meeting, and that neither the Town Board, the Planning Board, nor any other Town agency has taken any action on Plaintiff's application in the months since.  (Am. Compl. ¶ 69.)  However, Plaintiff claims that there has been final action on its application because of its attorney's conversation with the Town Attorney, Mr. DiCioccio, in which Mr. DiCioccio apparently said that "the Town is treating the failed motion to approve as a denial of the [Plaintiff's] application, and that no further proceedings before the Town Board, Planning Board, or any other Town Agency would be held."  (*Id.* ¶ 67.)  As described above, Plaintiff further asserts that this conversation was memorialized in a letter sent by Mr. Buzzell to Mr. DiCioccio, which stated that Mr. DiCioccio should send a written response if he disputed the accuracy of the letter or the statements therein.  (*Id.* ¶ 68.)  Plaintiff states that there was no response from Mr. DiCioccio.  (*Id.*)

The question before the Court is essentially whether the alleged conversation between the two attorneys, taken with Mr. DiCioccio's failure to respond to Mr. Buzzell's letter memorializing such conversation, constituted a final decision for purposes of standing and ripeness at the motion to dismiss stage.  As described above, on a motion to dismiss pursuant to Rule 12(b)(1), Plaintiff bears the "burden of proving by a preponderance of the evidence that [subject matter jurisdiction] exists.'"  *MacPherson*, 452 F. Supp. 2d at 136.  As also explained above, to meet the final-decision requirement of both standing and ripeness, the plaintiff must "obtain a final, definitive position as to the application of the relevant zoning law to the property from *the municipal entity responsible for those laws*."  *Islamic Cmty.*, 258 F. Supp. 3d at 416 (emphasis added).  Here, Plaintiff does not have a "final, definitive position" from the municipal

entity. Rather, Plaintiff has a non-vote and an alleged statement by the Town attorney absent any citation to relevant binding precedent suggesting that this utterance, such as it may be, constitutes a final decision, or is otherwise binding on the Town Board. This is insufficient to meet Plaintiff's burden, even at the motion to dismiss stage. Accordingly, Plaintiff's land-use base claims are not ripe and Plaintiff has not made out the related first element of the standing test. Therefore, Defendants' motion to dismiss pursuant to Rule 12(b)(1) is granted as to the following claims: the fourth cause of action for violations of 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment; the sixth cause of action for violations of substantive due process under the Fourteenth Amendment; and the seventh cause of action for violations of the takings clause of the Fifth and Fourteenth Amendments.

### 4. Standing in the FHA Context

#### a. Legal Standard

"The FHA makes it unlawful '[t]o refuse to sell or rent . . . or otherwise make unavailable or deny, a dwelling to any person because of race . . . [or] familial status.'" *Anderson Group, LLC v. City of Saratoga Springs*, 805 F.3d 34, 44 (2d Cir. 2015) (quoting 42 U.S.C. § 3604(a)). The FHA permits any "aggrieved person" to bring a suit challenging discriminatory housing practices. 42 U.S.C. § 3613(a)(1)(A). The FHA defines "aggrieved person" broadly to include any individual or corporation that "claims to have been injured by a discriminatory housing practice" or "believes that [it] will be injured by a discriminatory housing practice that is about to occur." *Id.* at § 3602(d), (i). "This FHA definition of 'aggrieved person' extends as broadly as permitted by Article III of the Constitution." *Olsen v. Stark Homes, Inc.*, 759 F.3d 140, 158 (2d Cir. 2014); *see also Mhany Mgmt.,Inc. v. Cty. of Nassau*, 819 F.3d 581, 600 (2d Cir. 2016) ("Standing under the Fair Housing Act is as broad as Article III permits"). "As such, there are

no prudential barriers to a plaintiff's standing under the FHA, and, to maintain suit a plaintiff is required only to demonstrate an 'injury in fact within the meaning of Article III' by showing that it suffered 'distinct and palpable injuries that are fairly traceable to [the defendant's] actions.'" *Anderson*, 805 F.3d at 44–45 (quoting *LeBlanc-Stenberg v. Fletcher*, 67 F.3d 412, 425 (2d Cir. 1995)) (internal citations omitted).

In *Anderson*, the plaintiffs owned a piece of land that was originally zoned for high density development. 805 F.3d at 39–40. In 2002, the *Anderson* plaintiffs "began pursuing plans to develop a 44-acre residential project" to contain 250 to 300 housing units, 20% of which were to be designated as affordable housing. *Id.* at 40. In 2003, the City Council voted to rezone the plaintiffs' property as a low-density rural-residential area with no more than eighty-eight structures to be allowed. *Id.* The defendants then refused to grant the plaintiffs a special use permit to develop the original project. *Id.* The Second Circuit held that the plaintiff's "lost up-front economic expenditures on a detailed development proposal for a specific piece of property, coupled with the denial of a necessary special use permit, constitute injuries-in-fact that are fairly traceable to the City's actions, thus affording [the plaintiff] standing to maintain this action." *Id.* at 45.

"The Second Circuit has not explicitly decided whether the final decision requirement applies to FHA claims." *Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona*, 915 F. Supp. 2d 574, 607 (S.D.N.Y. 2013). However, the consensus among lower courts in the Second Circuit and other Circuits is that "as-applied challenged under the FHA are not ripe unless the plaintiff has submitted at least one formal application for relief" and the responsible government entity has made a decision regarding the plaintiff's request. *Id.* (citing, e.g., *Bryant Woods Inn, Inc. v. Howard County, Md.*, 124 F.3d 597, 602 (4th Cir. 1997) (noting

that the county "must be afforded an opportunity make a final decision" for an FHA claim to be

ripe, even if the plaintiff is not required to pursue the "post-decisional procedures" that were then

required of a taking claim)).  In *Anderson*, the government entity had made a final decision on

the application by denying the plaintiff's application for a special use permit, and the Second

Circuit noted that there was precedent that such denial "is an injury sufficient in itself to confer

standing."  805 F.3d at 46 (citing *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*,

294 F.3d 35, 46 n.2 (2d Cir. 2002), *superseded by statute on other grounds*, ADA Amendments

of 2008, Pub. L. No. 110-325, 122 Stat. 3553).  While the Second Circuit did not specify in

*Anderson* whether a final decision is necessary for the plaintiff to have standing to bring an FHA

claim, the Circuit's discussion of the denial in the standing context suggests that it is a

prerequisite.

> b.  Plaintiff Lacks Standing to Bring its FHA Claim

Here, Plaintiff argues that it has suffered the following injuries: (1) a reduction in the

number of rental units; (2) a deprivation of its right to develop housing for minorities in a

"highly segregated" town; (3) objections to the application that were motivated by animus

toward minorities; and (4) the rejection (or at least failure to vote on) its application to amend its

C&Rs because the Property is in a majority-white area; and $10 million in economic losses

arising from "professional expenses and fees for the application, property taxes, and other

carrying costs."  (P.'s Mem. in Opp. [ECF No. 29-5] at 9–10.)  Defendants argue that it has not

made an ultimate determination on Plaintiff's application, so there can been no injury.  (Def.'s

Mem. in Supp. [ECF No. 29-10] at 13.)

As discussed above, an important distinction between *Anderson* and the case herein is

that in the former the plaintiffs had a final decision from the relevant zoning authority by way of

the denial of a special use permit. 805 F.3d at 46. Plaintiff tries to refute this finality

requirement by citing *Mhany Mgmt.*, however, in that case Garden City rezoned the site in

question from allowing multi-family dwellings to only allowing single-family dwellings. 819

F.3d at 596. The plaintiffs in *Mhany Mgmt.*, who were seeking to build affordable housing in

Garden City, asserted that it was financially infeasible to build affordable housing under the new

zoning restrictions at any price. *Id.* The Second Circuit held that the plaintiffs had standing

because they proposed a specific project and there was a 'substantial probability' that plaintiffs

would have built housing with greater minority occupancy if the property had not been rezoned.

*Id.* at 601. In other words, in *Mhany Mgmt.* there was a final zoning decision because the

property had been re-zoned while plaintiffs were in the midst of preparing their project.

Applying the case law to the Amended Complaint, the Court concludes that Plaintiff does

not have standing to bring its FHA claim because there is no final decision and accordingly no

injury. This case is easily discernible from *Anderson* and *Mhany Mgmt.* because here there was

no permit denial or re-zoning. In fact, this case is the inverse of *Mhany Mgmt.* because the

Property was originally re-zoned to accommodate Plaintiff's proposed development. While

Plaintiff claims that it has lost up-front expenditures, its claim is not ripe for review because

Defendants have not voted on Plaintiff's application to amend the C&Rs. This is particularly

true given that there is an Article 78 proceeding pending in state court to compel Defendants to

grant Plaintiff's application. As the Court explained above, Plaintiff has not met its burden at the

motion to dismiss stage to demonstrate that the Court has jurisdiction. The Court is not

persuaded by Plaintiff's unsupported argument that Defendants' non-vote constitutes a denial

and that Defendants' counsel's unsubstantiated statements and failure to respond to Plaintiff's

counsel's letter is confirmation of such denial. Accordingly, Defendants' motion to dismiss

Plaintiff's FHA claim for lack of standing is granted.

> ### 5. Defendants' Motion to Dismiss Plaintiff's §§1981 and 1982 Claims for Lack of Standing is Denied

Defendants assert in their motion to dismiss pursuant to Rule 12(b)(1) that Plaintiff does

not have standing to bring any of its claims, and that none of its claims are ripe because there has

been no final decision. (Def.'s Mem. in Supp. at 13.) Defendants then go on to exclusively

discuss the final decision requirement as it applies to land use and FHA claims. Defendants do

not mention whether a final decision is required to have standing to bring a § 1981 or § 1982

claim, and they cite to no authority in support of their argument except for one misquotation[4] of a

Second Circuit case referring to the ripeness standard for a § 1981 claim. (*See* Def.'s Mem. in

Supp. at 15 (misquoting *Brisbane v. Milano*, 443 F. App'x 593, 594 (2d Cir. 2011).) "It is not

the Court's job to guess what a party means to say, or to imagine" and research all arguments

they might raise. *See Suarez v. Big Apple Car, Inc.*, 2017 WL 9400686, at *2 (E.D.N.Y. Dec. 1,

2017).

Defendants further aver that Plaintiff does not have standing to bring its §§ 1981 and

1982 claims because "the interests advanced by Plaintiff are unrelated to the purpose implicit in .

. . §§ 1981 and 1982[.]" (Def.'s Mem. in Supp. at 13.) The Court is unpersuaded by this

argument. Plaintiff has brought suit against Defendants, in part, for allegedly refusing to amend

Plaintiff's C&Rs on the basis of racial discrimination while amending the C&Rs of another

project that was in a minority neighborhood. "Under § 1981, a plaintiff does not have to be a

member of a racial minority to bring a claim; rather, a non-minority plaintiff can allege personal

---

[4] Plaintiff's Memorandum in Support quotes *Brisbane v. Milano* as stating that the *Williamson* test applies to Plaintiff's § 1981 claim. There is no mention of *Williamson*, nor does the term "test" appear, in either *Brisbane* or the case *Brisbane* apparently cites, *Brown v. City of Oneonta*, 221 F.3d 329 (2d Cir. 2000).

injury stemming from a defendant's discriminatory conduct against a racial minority." *Stone v. White*, 2016 WL 1298725, at \*5 (N.D.N.Y. Mar. 31, 2016) (citing *Robledo v. Bond No. 9*, 965 F. Supp. 2d 470, 476 (S.D.N.Y. 2013)) (denying a motion to dismiss a white plaintiff's § 1981 claim wherein she alleged that she protested defendant's verbal abuse against a racial minority); *see also Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Engineers Local 15, et al. v. Tightseal Construction Inc.*, 2018 WL 3910827, at \*6 n.6 (S.D.N.Y. Aug. 14, 2018) (explaining that there is precedent for allowing a corporation to bring a § 1981 claim and noting that "the Court sees no reason to challenge, *sua sponte*, the parties' assumption that despite [defendant's] corporate identity, it may advance a Section 1981 claim"); *John and Vincent Arduini Inc. v. NYNEX*, 129 F. Supp. 2d 162, 169 (N.D.N.Y. 2001) (holding that any "limitation on § 1981 standing for a corporation should not be construed as applying to situations where a corporation alleges that it was injured because of its relationship with a person of minority racial identity"); *Mhany Mgmt.*, 819 F.3d at 600 (finding that the court did not "discern[] any standing concerns that would prevent Plaintiffs from bringing claims under Section[] 1981" where plaintiffs were corporations challenging a re-zoning on the basis of prejudice to potential minority residents and minorities generally).

Defendants advance other arguments in support of their motion to dismiss Plaintiff's § 1981 and § 1982 claims, but they are relevant to the Rule 12(b)(6) motion and not the Rule 12(b)(1) motion. Accordingly, Defendants' motion to dismiss Plaintiff's § 1981 and § 1982 claims is denied albeit without prejudice. Defendants are directed to file a renewed motion to dismiss on the limited question of whether a final decision is required for standing and ripeness for § 1981 and § 1982 claims, and, if not, whether there are any other reasons that the Court does not have subject matter jurisdiction over such claims. The Court will not consider Defendants'

Rule 12(b)(6) motion to dismiss with regards to Plaintiff's § 1981 and § 1982 claims at this time because the Court may or may not have jurisdiction to do so. Defendants may renew their 12(b)(6) motion when they file their renewed Rule 12(b)(1) motion, as explained further *infra*.

6. Defendants' Motion to Dismiss Plaintiff's NYSHRL Claim for Lack of Standing is Denied Without Prejudice to Renew

Presumably, Defendants also intended their Motion to Dismiss pursuant to Rule 12(b)(1) to extend to Plaintiff's NYSHRL claim because they assert that Plaintiff does not have standing to bring the entire action. (*See* Def.'s Mem. in Supp. at 13.) However, there is no discussion of Plaintiff's lack of standing to bring a § 296(6) claim in either of Defendants' memoranda in support of their Motion to Dismiss. Rather, Defendants make sweeping pronouncements that a final decision is required for all of Plaintiff's claims without citing to any authority in support of this proposition as it applies to the NYSHRL. Accordingly, Defendants motion to dismiss Plaintiff's NYSHRL is denied and Defendants are directed to file further briefs on the question of whether a final decision is required for a NYSHRL claim brought pursuant to § 296(5) and § 296(6). The Court acknowledges that "[t]he standards under the NYSHRL . . . parallel those applicable under the Fair Housing Act." *Miller v. 270 Empire Realty LLC*, 2012 WL 1933798, at *4 (E.D.N.Y. Apr. 6, 2012). However, this alone is not a basis for dismissal and the Court is not required to make the Parties' arguments for them. The Court will not consider Defendants' Rule 12(b)(6) motion to dismiss with regards to Plaintiff's NYSHRL claim because the Court may or may not have jurisdiction to do so.

II. *Abstention*

Defendants argue in the alternative that if Plaintiff does have standing to bring any of its claims, the Court should abstain from exercising jurisdiction under both the *Younger* and *Colorado River* abstention doctrines. While there are outstanding questions as to whether

Plaintiff has standing to brings it § 1981, § 1982, and NYSHRL claims, that Court will consider whether it should abstain and dismiss the action in its entirety at this stage.

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 813 (1976). The Second Circuit has characterized the abstention doctrine as "compris[ing] a few extraordinary and narrow exceptions to a federal court's duty to exercise its jurisdiction." *Woodford v. Community Action Agency of Green County, Inc.*, 239 F.3d 517, 522 (2d Cir. 2001) (internal quotation marks omitted).

A. *Younger* Abstention

The Supreme Court has recognized that in certain instances "the prospect of undue interference with state proceedings counsels against federal relief." *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013). "*Younger* [*v. Harris*, 401 U.S. 37 (1971)] exemplifies one class of cases in which federal-court abstention is required . . . ." *Id.* (internal quotation marks omitted). The Second Circuit has explained that *Younger* abstention is "mandatory" when three conditions are met: "(1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceedings afford the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." *Spargo v. New York State Com'n on Judicial Conduct*, 351 F.3d 65, 75 (2d Cir. 2003). "In the context of applying the *Younger* abstention doctrine, courts have found that 'the State has an important interest in regulating zoning and land use.'" *Jurelli, LLC v. Schaefer*, 53 F. Supp. 3d 552, 560 (E.D.N.Y. 2014) (quoting *Thomas v. Venditto*, 925 F. Supp. 2d 352, 357 (E.D.N.Y. 2013)). However, "*Younger* abstention does not extend to 'all parallel state and federal proceedings' that meet those three conditions, even 'where a party could identify a plausibly important state interest.'" *In re*

*Standard & Poor's Rating Agency Litigation*, 23 F. Supp. 3d 378, 409 (quoting *Sprint*, 134 S. Ct. at 593). Rather, the *Younger* doctrine only applies to three types of parallel proceedings: (1) "pending state criminal proceeding[s;]" (2) "civil proceedings that are akin to criminal prosecutions[;]" and (3) civil proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." *Id.* Thus, "only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." *New Orleans Public Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989).

Here, the pending state action is not a criminal proceeding nor is it a civil proceeding that is akin to a criminal prosecution. Accordingly, the first two parallel proceedings do not apply to this matter. As to the final parallel proceeding, this is not a matter that implicates New York State's interest in enforcing the orders and judgments of its courts. There has been no order or judgment in this matter, nor would this matter effect the enforcement of future orders and/or judgments more generally. Accordingly, this is not a proceeding that satisfies any of the "exceptional circumstances" that warrant abstention under *Younger*. *See Booker v. Griffin*, 2018 WL 1614346, at *5 (S.D.N.Y. March 31, 2018).

B. *Colorado River* Abstention

In *Colorado River*, the Supreme Court announced that "while the [general] rule is that the pendency of an action in the state court is no bar to proceedings concerning the matter in the Federal court having jurisdiction" a court may abstain in order to conserve federal judicial resources where resolution of the state matter may result in "comprehensive disposition of the litigation." *Colorado River*, 424 U.S. at 817; *see Woodford*, 239 F.3d at 522.

The *Colorado River* abstention analysis begins with a determination of whether the concurrent proceedings are parallel; parallelism is a "necessary prerequisite." *Smulley v. Mutual*

*of Omaha Bank*, 634 Fed. App'x 335, 337 (2d Cir. 2016) (citing *Dittmer v. County of Suffolk*,

146 F.3d 113, 118 (2d Cir. 1998)). "Actions are 'parallel when substantially the same parties are

contemporaneously litigating the same issue in another forum.'" *Smulley*, 634 Fed. App'x 335,

337 (2d Cir. 2016) (quoting *Niagara Mohawk*, 673 F.3d at 100); *see also Dittmer v. County of*

*Suffolk*, 146 F.3d at 118 ("Suits are parallel when substantially the same parties are

contemporaneously litigating substantially the same issue in another forum") (internal quotation

marks omitted); *Blake*, 942 F. Supp.2d at 293 ("Cases are considered parallel when the main

issue in the case is the subject of already pending litigation.") (internal quotation marks omitted).

"Perfect symmetry of parties and issues is not required." *United States v. Blake*, 942 F. Supp.2d

285, 297 (E.D.N.Y. 2013) (citations omitted). Abstention may be appropriate "notwithstanding

the nonidentity of the parties" in cases where interests are "congruent." *Canaday v. Koch*, 608 F.

Supp. 1460, 1475 (S.D.N.Y.), *aff'd*, 768 F.2d 501 (2d Cir. 1985).

> If the proceeding are parallel, then the following six factors should be considered:
>
> (1) whether the controversy involves a res over which one of the courts has
> assumed jurisdiction; (2) whether the federal forum is less convenient than
> the other for the parties; (3) whether staying or dismissing the federal action
> will avoid piecemeal litigation; (4) the order in which the actions were filed;
> (5) whether federal law provides the rule of decision; and (6) whether the
> state procedures are adequate to protect the plaintiff's federal rights.

*Woodford*, 239 F.3d at 522 (internal citations omitted). "No one factor is necessarily

determinative . . . . Only the clearest of justifications will warrant dismissal." *Moses H. Cone*

*Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 15–16 (1983) (quoting *Colorado*

*River*, 424 U.S. at 818-19) (emphasis omitted). "Where a *Colorado River* factor is facially

neutral, that is a basis for retaining jurisdiction, not for yielding it." *Niagara Mohawk Power*

*Corp v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 101 (2d Cir. 2012) (internal

quotation marks omitted).

Here, this action is parallel with the state court action as they both revolve around the same core issues regarding Defendants' failure to amend the C&Rs that are applicable to Plaintiff's proposed project on the Property. Furthermore, both cases involve "substantially" the same parties. Having determined that the two actions are parallel, the Court will address the six-part balancing test.

Jurisdiction over a res may be "dispositive" in a *Colorado River* analysis. *See FDIC v. Four Star Holding Co.*, 178 F.3d 97, 102 (2d Cir. 1999) (citing *40235 Washington St. Corp. v. Lusardi*, 976 F.2d 587, 589 (9th Cir. 1992) (per curiam) (holding that in an action concerning the disposition of property, "the first prong of the Colorado River abstention test is dispositive . . . [and] the forum first assuming custody of the property at issue has exclusive jurisdiction to proceed")). Neither the state court action nor this action are proceedings "in rem." While the state and federal proceedings all involve the use of the same property, this factor is neutral and weighs against abstention.

The state court proceeding is pending in Suffolk County, which is just as convenient to the Parties as this Court. Thus, this factor is neutral and favors retention of federal jurisdiction. *See Village of Westfield, NY. v. Welch's*, 170 F.3d 116, 122 (2d Cir. 1999).

Avoidance of piecemeal litigation is of paramount importance in a *Colorado River* analysis. *See Moses H. Cone*, 460 U.S. at 16 (stating that "the most important factor in our decision to approve the dismissal [in *Colorado River*] was the clear federal policy . . . of avoidance of piecemeal adjudication") (internal quotation marks and brackets omitted); *Arkwright–Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 211 (2d Cir. 1985) (noting that in the case before it, "the danger of piecemeal litigation is the paramount consideration"). The main issue in this case, namely Defendants' failure to approve Plaintiff's

application to change the C&Rs that apply to the Property, is also the main issue in the state

proceeding.  Although this suggests that there is a risk of conflicting final judgments, the

Supreme Court has explained that "mere potential for conflict in the results of adjudications,

does not, without more warrant staying exercise of federal jurisdiction." *Colorado River*, 424

U.S. at 816; *see also Village of Westfield*, 170 F.3d 116 at 123 (quoting the same).  Based on the

Parties' moving papers and the Court's brief review of the amended petition in the state court

action, it seems that the question of whether Defendants have violated Plaintiff's civil rights is

not before the state court.  As these are the only remaining claims in this action, this factor

weighs against abstention.

The Supreme Court Action was commenced on December 20, 2016, prior to the filing of

the instant action on December 19, 2017.  The relative commencement dates are not

determinative; rather, the relative progress of the cases in each forum are to be considered.

*Arkwright-Boston*, 762 F.2d at 211 (citing *Moses Cone*, 460 U.S. at 21-22).  Here, neither party

has shared with this Court the status of the state case.  The Court's brief review of the state court

docket did not reveal that anything has been resolved in that proceeding, but the state court

action does seem to be farther along since the state court action is scheduled for trial and in the

instant action Defendants have not yet filed an Answer.  Accordingly, this factor favors

abstention.

The Amended Complaint contains both state and federal law claims, and some of the

state and federal claims have survived Defendants' Rule 12(b)(1) motion to dismiss.  The

presence of federal claims normally weighs against abstention but only slightly where the claims

are not within the exclusive jurisdiction of the federal courts.  *See generally Niagara Mohawk*,

673 F.3d at 99 ("[T]he presence of a federal basis of jurisdiction may raise the level of

justification needed for abstention . . . .") (internal quotation marks omitted).  Abstention is favored "where the bulk of the litigation would necessarily revolve around the state-law . . . rights of . . . parties."  *See General Reins. Corp. v. Ciba-Geigy Corp.*, 853 F.2d 78, 82 (2d Cir. 1988) (internal quotation marks omitted).  Here, the remaining claims concern primarily federal rights.  This weighs against abstention.

The last factor is whether "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties."  *Moses H. Cone*, 460 U.S. at 28.  To the extent Plaintiff succeeds in the state court action, Plaintiff will have received relief that parallels the relief sought in this action.  However, the state court will not address whether Defendants have violated Plaintiff's civil rights.  Accordingly, the state court action will not resolve all of the issues between the Parties.  Thus, this factor weighs against abstention.

Upon consideration of the six Colorado River factors, five of which weigh against abstention, the Court concludes that this case does not fall within the "exceptional circumstances" warranting abstention.

C. *Wilton* Abstention

Defendants further assert that the *Wilton* abstention doctrine applies to Plaintiff's request for declaratory relief.  (Def.'s Mem. in Supp. at 19.)  *Wilton* provides that "[t]o avoid wasteful and duplicative litigation, district courts may often dismiss declaratory judgment actions 'where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.'"  *Dittmer*, 146 F.3d at 118 (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S. Ct. 2137, 132 L.Ed.2d 214 (1995)).  Here, two of the three claims that remain are governed by federal law.  As far as the Parties have informed this Court, and as far as this Court can glean from reviewing the state court docket and pleadings, the sole state law claim

for violations of the NYSHRL has not been asserted in the state court proceeding. Accordingly, the Court cannot abstain from exercising jurisdiction over Plaintiff's request for declaratory relief under *Wilton*.

For the reasons explained *supra*, Defendants' request that the Court abstain from exercising jurisdiction over this matter is denied in its entirety.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss pursuant to Rule 12(b)(1) is granted as to: Plaintiff's first cause of action for violations of the FHA; fourth cause of action for violations of 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment; sixth cause of action for violations of substantive due process under the Fourteenth Amendment; and seventh cause of action for violations of the takings clause of the Fifth and Fourteenth Amendments. Plaintiff's Rule 12(b)(1) motion is denied at this time as to Plaintiff's second cause of action for violations of § 1981; third cause of action for violations of § 1982; and fifth cause of action for violations of the NYSHRL. Defendants' motion to dismiss pursuant to Rule 12(b)(6) is likewise denied at this time, as the Court may or may not have subject matter jurisdiction to consider these claims on the merits. As such, Defendants are directed to file a renewed motion to dismiss pursuant to Rule 12(b)(1), limited to the question of whether a final decision is required to establish standing and ripeness for § 1981, § 1982, and NYSHRL claims. Defendants may also renew their prior motion to dismiss pursuant to Rule 12(b)(6), but neither side shall alter their previous briefing on this motion unless permission of the Court is first sought and obtained.[5] Defendants shall serve but not file their moving papers on or before

---

[5] Defendants should re-file their Rule 12(b)(6) moving papers along with their renewed 12(b)(1) moving papers. Defendants and Plaintiff may include their original arguments/responses in their memoranda for the renewed Rule 12(b)(1) motion.

October 18, 2019; Plaintiff shall serve but not file opposing papers on or before November 1,

2019; and Defendants shall serve reply papers, if any, and file all papers with the Court,

including a courtesy copy for Chambers, on or before November 8, 2019.

**SO ORDERED.**
Dated: Central Islip, New York
       September 27, 2019

                                        _____/s/_____
                                        Denis R. Hurley
                                        United States District Judge