UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
VILLAGE GREEN AT SAYVILLE, LLC,

                      Plaintiff,

 - against -

THE TOWN OF ISLIP, THE TOWN BOARD OF
THE TOWN OF ISLIP, THE PLANNING
BOARD OF THE TOWN OF ISLIP, ANGIE M.
CARPENTER, individually and in her official
capacity as Member of the Town Board of the
Town of Islip, STEVEN J. FLOTTERON,
individually and in his official capacity as
Member of the Town Board of the Town of Islip,
TRISH BERGIN WEICHBRODT, individually
and in her official capacity as Member of the
Town Board of the Town of Islip, JOHN C.
COCHRANE, JR., individually and in his official
capacity as Member of the Town Board of the
Town of Islip, MARY KATE MULLEN,
individually and in her official capacity as
Member of the Town Board of the Town of Islip,
EDWARD FRIEDLAND, individually and in his
official capacity as Member of the Planning
Board of the Town of Islip, KEVIN BROWN,
individually and in his official capacity as
Member of the Planning Board of the Town of
Islip, ANTHONY MUSUMECI, individually and
in his official capacity as Member of the Planning
Board of the Town of Islip, JOSEPH
DEVINCENT, individually and in his official
capacity as Member of the Planning Board of the
Town of Islip, DONALD FIORE, individually and
in his official capacity as Member of the Planning
Board of the Town of Islip, DANIEL DELUCA,
individually and in his official capacity as
Member of the Planning Board of the Town of
Islip, and MICHAEL KENNEDY, individually
and in his official capacity as Member of the
Planning Board of the Town of Islip,

                      Defendants.
-------------------------------------------------------------------X

**<u>MEMORANDUM AND ORDER</u>**

2:17-CV-7391 (DRH) (ARL)

**APPEARANCES**

**LAW OFFICES OF MARK A. CUTHBERTSON**
Attorneys for Plaintiff
434 New York Avenue
Huntington, NY 11743
By:    Mark A. Cutherbertson, Esq.
       Matthew DeLuca, Esq.

**SINNREICH KOSAKOFF & MESSINA LLP**
Attorneys for Defendants
267 Carleton Avenue, Suite 301
Central Islip, NY 11722
By:    Vincent J. Messina, Jr., Esq.
       Lisa A. Perillo, Esq.
       Timothy F. Hill, Esq.

**ISLIP TOWN ATTORNEY'S OFFICE**
Attorney for Defendant
655 Main Street
Islip, NY 11751
By:    John Ryan DiCioccio, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

In an Order dated September 27, 2019, (the "Order" [ECF 34][1]), the Court

granted the captioned Defendants' motion to dismiss Plaintiff Village Green at

Sayville, LLC's ("Plaintiff") first, fourth, sixth, and seventh causes of action for lack

of subject-matter jurisdiction.  The Court denied the Defendants' motion as to

Plaintiff's second, third, and fifth causes of action, which respectively concern alleged

violations of 42 U.S.C. §§ 1981, 1982 and New York State Human Rights Law

("NYSHRL"), N.Y. Exec. L. § 296.  As to these three counts, Defendants were directed

---

[1]    The Order can be found at 2019 WL 4737054 (E.D.N.Y. 2019).

to renew their motion pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), limited to the question of whether a final decision is required to establish standing and ripeness for § 1981, § 1982 and NYSHRL claims.

Defendants' renewed motion to dismiss Counts Two, Three, and Five is presently before the Court, (Def. Renewed Mem. [ECF 44]), along with Plaintiff's cross-motion made pursuant to Federal Rule of Civil Procedure 54(b) to reargue the Order's dismissal of the first, fourth, sixth, and seventh causes of action, (Pl. Recons. [ECF 45]).  The Court concludes that § 1981, § 1982, and NYSHRL claims require a final decision before a plaintiff has standing; because Plaintiff has no final decision, Defendants' renewed motion is GRANTED, resulting in the dismissal of Counts Two, Three, and Five.  Though Plaintiff failed to raise the futility exception in the briefing on the initial motion to dismiss, Plaintiff's cross-motion to reargue the Order is GRANTED on this issue.  Upon reargument, however, Defendants' motion to dismiss is GRANTED as to all counts, as Plaintiff has failed to demonstrate futility. Plaintiff's cross-motion to reargue the Order is DENIED with respect to Fair Housing Act standing because Plaintiff is incorrect in contending that it does not require a final decision.

## BACKGROUND

The Court assumes familiarity with its full recitation of relevant facts as set forth in its earlier Order.  (*See* Order at 3–7).

In short, Plaintiff alleges Defendants' racially discriminatory animus motivated them to stifle Plaintiff's efforts to modify certain covenant and restrictions

("C&Rs"), which Plaintiff and Defendants had previously agreed upon as a condition to rezoning property, but with which Plaintiff could not comply as a result of Defendants' subsequent conduct. (Am. Comp. ¶¶ 2, 4, 6). Plaintiff's endeavors have stalled following "contentious public hearings" evidencing hostility towards minorities and the Town Board's "non-vote," in which Board members failed to second a motion to approve Plaintiff's application. (*Id.* ¶¶ 6–7, 53, 63). Plaintiff tried to confirm, with the Town Attorney, that "no further proceedings before the Town Board, Planning Board or any other Town Agency will be held" and that Defendants consider the failed motion to approve a "denial." (*Id.* ¶¶ 67–68; Ex. B to Am. Compl.). The Town Attorney never responded to Plaintiff's inquiries. (*Id.* ¶¶ 67–68).

Plaintiff brought actions in New York State court and federal court. In state court, Plaintiff filed an Article 78 petition asking that court to "direct [Defendants] to Approve the Village Green Application, without any Covenants, Conditions, or Modifications." (Am. Verified Pet. ¶ 251, *Village Green at Sayville, LLC v. Town of Islip et al.*, No. 16-11060 (N.Y. Sup. Ct. July 25, 2017) (capitalization in original); *e.g.*, *id.* ¶ 255 ("Defendants are obligated to process the site plan application. Such is administrative. This is ministerial and non-discretionary."); ¶ 257 ("Village Green is entitled to entry of a Preliminary Injunction and Temporary Restraining Order against [Defendants] directing them to process a Village Green site plan application.")). The Article 78 proceeding remains pending.

In federal court, Plaintiff alleges seven causes of action for violations of the: (1) Fair Housing Act, 42 U.S.C. § 3601 et seq. ("FHA"); (2) Civil Rights Act of 1866,

42 U.S.C. § 1981; (3) Civil Rights Act of 1866, 42 U.S.C. § 1982; (4) Civil Rights Act of 1871, 42 U.S.C. § 1983, and the Equal Protection Clause of the Fourteenth Amendment; (5) NYSHRL § 296(6); (6) substantive due process under the Fourteenth Amendment; and (7) the takings clause of the Fifth Amendment, as applicable to the states by the Fourteenth Amendment. (Am. Compl. ¶¶ 87–133).

On September 27, 2019, this Court dismissed the first, fourth, sixth, and seventh claims for lack of subject-matter jurisdiction. Under the first prong of the *Williamson County Regional Planning Commission v. Hamilton Bank* ("*Williamson*") analysis, these claims ripen for federal judicial consideration only after the municipal entity "reache[s] a final decision" on Plaintiff's application. (Order at 10–11 (quoting *Williamson*, 473 U.S. 172, 186 (1985)). Plaintiff proffered the Town Board's non-vote and the Town Attorney's silence as evidencing a final decision. (*Id.* at 12–15). The Court disagreed. (*Id.* ("Plaintiff has a non-vote and an alleged statement by the Town attorney absent any citation to relevant binding precedent suggesting that this utterance, such as it may be, constitutes a final decision, or is otherwise binding on the Town Board.")).

Further, Defendants' "sweeping pronouncements that a final decision is required" for the § 1981, § 1982, and NYSHRL claims went "without cit[ation] to any authority in support." (*Id.* at 17–19). The Court thus ordered the parties to address whether *Williamson*'s final-decision requirement applies to those three claims. (*Id.*).

Defendants renewed their motion to dismiss as to the remaining claims on November 1, 2019. (*See* Def. Renewed Mem.). On January 31, 2020, Plaintiff

cross-moved to reargue the Court's Order on the four already-dismissed claims. *See* Pl. Recons.

## DISCUSSION

The Court begins with Defendants' renewed motion to dismiss Counts Two, Three, and Five, and then turns to Plaintiff's cross-motion to reargue the dismissal of Counts One, Four, Six, and Seven.

### I.   Renewed Motion to Dismiss Pursuant to Rule 12(b)(1) for Lack of Subject Matter Jurisdiction

#### A.   Legal Standards

A district court may properly dismiss a case pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction when it lacks the "statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Plaintiffs asserting a district court's subject-matter jurisdiction bear the burden to prove its existence by a preponderance of the evidence. *MacPherson v. State St. Bank & Trust Co.*, 452 F. Supp. 2d 133, 136 (E.D.N.Y. 2006), *aff'd*, 273 F. App'x 61 (2d Cir. 2008); *accord Tomaino v. United States*, 2010 WL 1005896, at *1 (E.D.N.Y. Mar. 16, 2010). A court may consider materials beyond the pleadings to resolve questions about its subject-matter jurisdiction. *Cunningham v. Bank of New York Mellon, N.A.*, 2015 WL 4101839, at *1 (E.D.N.Y. July 8, 2015) (citing *Morrison v. Nat'l Austl. Bank, Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)).

The standing doctrine concerns a federal court's jurisdictional power to hear a plaintiff's suit. *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir.2010) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Plaintiffs must have standing for each of

their claims and forms of relief sought. *Id.* (quoting *Baur v. Veneman*, 352 F.3d 625, 642 n.15 (2d Cir.2003)). For standing, Article III of the U.S. Constitution demands (1) the plaintiff must have "suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). An "injury-in-fact" is a "concrete and particularized and actual or imminent, not conjectural or hypothetical" invasion of a legally protected interest. *Id.* at 736 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48 (2016)). At the pleadings stage, general factual allegations of injury resulting from the defendant's conduct may suffice to show standing. *Id.* at 736 (quoting *Lujan*, 504 U.S. at 561).

The ripeness doctrine concerns the "Article III limitations on judicial power and prudential reasons to refuse exercising jurisdiction," *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003), and can be viewed as a "specific application of the actual[, concrete, particularized, or imminent] injury aspect of Article III standing," *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013). Unless ripe, a plaintiff's case impermissibly entangles a federal court in abstract disagreements on premature matters involving speculative injuries that may never occur. *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir. 2002).

## B.    The Parties' Arguments

Defendants answer the Court's question in the affirmative: a final decision is a prerequisite to the Court entertaining Plaintiff's § 1981, § 1982, and NYSHRL claims.   Defendants construe broadly the term "land-use"—from the binding precedent espousing the finality requirement—as referring to any "land-use dispute generally" and not referring specifically to, *e.g.*, takings, due process, and equal protection claims.  Def. Renewed Mem. at 13–17.  They cite *Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118 (2d Cir. 2014) and *Town & Country Adult Living, Inc. v. Vill./Town of Mt. Kisco*, 2019 WL 1368560 (S.D.N.Y. Mar. 26, 2019) for the application of the *Williamson* final-decision requirement to discrimination claims in the land-use context.  Def. Renewed Mem. at 13–17.  And even if the § 1981, § 1982, and NYSHRL claims are not "land-use" claims, Defendants continue, ordinary constitutional standing and ripeness principles dictate that no concrete injury occurred in the absence of a final decision.  *Id.* at 17–20.

Plaintiff concedes that "all seven . . . causes of action are governed by the finality requirement in *Williamson*, which requires the municipality [to have] reached a final decision."  Pl. Recons. at 9; *see id.* at 10–11 ("[T]he *Williamson* finality requirement similarly applies to Plaintiff's Second and Third Causes of Action. . . . Plaintiff's Fifth Cause of Action, for violations of the NYSHRL, is also subject to the finality requirement.").

Because the issue goes to subject-matter jurisdiction, the Court proceeds with its analysis notwithstanding the parties' agreement that a final decision is required.

*See Platinum-Montaur Life Scis., LLC v. Navidea Biopharm., Inc.*, 943 F.3d 613, 617 (2d Cir. 2019) ("[S]ubject-matter jurisdiction cannot be . . . conferred by consent of the parties.").

### C. Plaintiff Lacks Standing for its Second, Third, and Fifth Causes of Action

#### 1. *Williamson*'s Final-Decision Requirement

The Second Circuit has extended *Williamson*'s finality requirement to discrimination-based land-use claims like Plaintiff brings here, including to § 1981, § 1982, and NYSHRL claims. *See Sunrise Detox*, 769 F.3d 118 (2d Cir. 2014).

In *Sunrise Detox*, the plaintiff applied for a special zoning permit to designate its proposed drug and alcohol rehabilitation facility a "community residence." *Id.* at 119–20. Though the planning board recommended approval, public opposition led the plaintiff to revise its application, requesting instead a "reasonable accommodation" to treat the facility as a community residence. *Id.* at 120. The defendants denied the new application and advised the plaintiff either to seek a variance or to appeal the decision, as "the city could take no further action." *Id.* at 119, 121. The plaintiff chose neither option and filed a lawsuit alleging *inter alia* intentional discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq. Id.*

The Second Circuit affirmed dismissal on ripeness—or, more specifically, *un*-ripeness—grounds. *Sunrise Detox*, 769 F.3d at 124–25. In so holding, it explained the *Williamson* finality requirement extended beyond that case's regulatory taking posture. *Id.* at 122 ("We have previously extended the final-decision requirement to

zoning challenges based on substantive due process; First Amendment rights of assembly and free exercise; the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") . . . ; and a state analogue to RLUIPA." (citing *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 349–50, 352 (2d Cir. 2005)). As such, "a plaintiff alleging discrimination in the context of a land-use dispute is subject to the final-decision requirement unless he can show that he suffered some injury independent of the challenged land-use decision." *Id.* at 123. Such independent injuries may flow from "a zoning policy that is discriminatory on its face or the manipulation of a zoning process out of discriminatory animus to avoid a final decision," either of which obviates a plaintiff's need to await a final decision. *Id.* (internal citations omitted); *see also Safe Harbor Retreat LLC v. Town of E. Hampton*, 629 Fed. App'x 63, 65 (2d Cir. 2015).

The finality requirement applies to Plaintiff's second, third, and fifth counts.[2] Those counts are alleged to have "arisen out of a pattern of discrimination on the basis of race, ethnicity, and familial status" in a land-use dispute. *See* Am. Compl. ¶ 2; *id.* ¶ 13 ("Defendants' conduct . . . has prevented Minorities from obtaining housing in the overwhelmingly white hamlet of Sayville, thereby perpetuating the pattern of segregation in the Town . . . ."); ¶ 36 ("[T]he Town has prevented

---

[2]     The Second Circuit did not distinguish between federal- and state-law causes of action alleging discrimination in the land-use context, *see Sunrise Detox*, 769 F.3d at 124 (applying the *Williamson* final-decision requirement to Connecticut's RLUIPA analogue), and there is no basis to distinguish them here. *See* Am. Compl. ¶ 2; *see also* Pl. Recons. at 11 ("[T]he finality requirement of *Williamson* can also be applied . . . under New York State law.").

construction of the type of affordable and market-rate rental apartments that Minorities are disproportionately likely to occupy.  This serves to exclude Minorities and perpetuate the pattern of segregation that currently exists in the Town."); ¶ 81 ("[T]he Town has a custom, policy, or practice of limiting affordable or rental housing in predominately white areas . . . by imposing C&Rs that require condominiums or impose age-restrictions on rental apartments, while infrequently imposing such restrictions on properties in areas with high concentrations of Minorities."); ¶ 82 ("Defendants frequently grant applications to modify C&Rs to permit rental apartments in the areas . . . with a high concentration of Minorities, while refusing to modify such C&Rs in predominantly white areas . . . , which has the purpose and effect of discriminating against Minorities that seek to live in the predominantly white areas . . . ."); ¶ 85 ("Defendants' refusal to modify the C&Rs precluding the development of multi-family housing, and rejecting Plaintiff's application[,] have the purpose and effect of limiting the housing opportunities for Minorities . . . and perpetuating ethnic and racial segregation in housing in the Town."); *see also id.* ¶¶ 89–98, 102–03, 107–08, 112–118, 124–25.

Plaintiff does not plead any "injury independent of the challenged land-use decision" that would exempt its case from the finality requirement.  *See Sunrise Detox*, 769 F.3d at 123.  There are no plausible allegations against Defendants for facially discriminatory policies.  *See* Am. Compl. ¶ 90 ("This *facially-neutral* custom, policy or practice, both *on its face* and as applied . . . , has reinforced the historical patterns of racial and ethnic segregation in the Town." (emphasis added)).

Nor does Plaintiff allege Defendants are manipulating its zoning process with a "discriminatory animus to avoid a final decision." *See Sunrise Detox*, 769 F.3d at 123 (emphasis added); *Safe Harbor Retreat*, 629 Fed. App'x at 65. Indeed, Plaintiff's Complaint and opposition briefing on Defendants' first motion to dismiss reflect Plaintiff's belief that it received a final decision. *E.g.*, Am. Compl. ¶ 9 ("On the very night the Town Board denied Plaintiff's application . . ."); *id.* ¶ 12 ("In denying Plaintiff's application . . ."); *id.* ¶ 76 ("During the same period which the Town and Planning Boards considered and denied Plaintiff's application . . ."); *id.* ¶ 96 ("Defendants denied Plaintiff's application without even holding a vote thereon."); Pl. Opp. at 8 [ECF 29-5] ("The non-vote was treated as a denial, and no further action was taken on the Application."); *id.* at 12 ("[I]t is clear that the Town Board's . . . non-vote was a denial . . ."); *id.* ("Defendants' record of this vote, memorialized in a Town Board resolution, states that the vote 'fail[ed] for lack of a second.' It should therefore be considered a denial." (internal citation omitted)).

With nary a hint in the Complaint of injuries independent of the challenged land-use decision, Plaintiff must satisfy the *Williamson* finality requirement. *See Sunrise Detox*, 769 F.3d at 123.

### 2. *Sunrise Detox*'s Hypothetical

Before the Court leaves behind its *Sunrise Detox* analysis, a hypothetical from that case merits brief mention. The Second Circuit declined to answer whether

> a property owner who claimed that a local official vetoed his or her development project out of hostility based on the owner's race, gender, disability, or the like, in violation of federal statutory or constitutional law, could seek immediate recompense in federal court from that official for the dignitary or emotional harm inflicted by the official even in the

absence of a final decision on the development proposal or without pursuing an administrative appeal of that action. That question is not presented in [*Sunrise Detox*], because [plaintiff] does not seek compensatory damages from the official who it claims acted out of discriminatory motivation, but rather seeks an injunction blocking the disapproval and authorizing construction of its project. Regardless of the basis of the claim that the local action violated federal rights, the relief sought brings the case squarely within the compass of *Williamson County* and its progeny.

*Id.* at 123. That is, a final decision may, or may not, be required of a property owner (i) seeking compensatory damages (ii) for "dignitary or emotional harm" (iii) flowing from an official's discrimination (iv) towards the owner's race. *See id.* Taking each in sequence, it is clear that Plaintiff seeks compensatory damages. Am. Compl. ¶ 1; *id.* at 31 ¶ C ("Plaintiff demands judgment against Defendants as follows . . . [a]ward compensatory damages . . . [to] fully compensate Plaintiff for the loss that has been caused by the conduct of Defendants alleged herein."). But it is problematic if Plaintiff purports that the Complaint alleges "dignitary or emotional harm." The Court holds that Plaintiff's failure to allege "dignitary or emotional harm" removes itself from *Sunrise Detox*'s hypothetical.

In its list of harms, Plaintiff leads with "economic losses" from "professional expenses and fees related to [his application], property taxes and other carrying costs." *Id.* ¶ 86; Pl. Opp. at 9–11; *see* Order at 15 (reciting Plaintiff's injuries). Suffice to say, these are not dignitary harms. The closest allegation is the "deprivation of [the] right to develop affordable housing for Minorities." Am. Compl. ¶ 86 (capitalization in original). Conceptually, this deprivation is a "harm" in-and-of-itself and wholly separate from a "dignitary harm," though the latter may spring from the former. *Cf. Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998) ("The deprivation

of First Amendment rights entitles a plaintiff to judicial relief wholly aside from . . . any mental or emotional injury he may have incurred."); *see generally Augustin v. Jablonsky*, 2001 WL 770839, at *6 n.4 (E.D.N.Y. Mar. 8, 2001) (defining "dignitary harm").   Nevertheless, absent a basis to connect Plaintiff's "deprivation" to a dignitary or emotional harm, the Court will not conjure one into the Amended Complaint.   Therefore, the claims here are not the type considered in *Sunrise Detox*'s outstanding hypothetical.   *See Sunrise Detox*, 769 F.3d at 123.

### 3.    Plaintiff Has No Final Decision

For the same reasons expressed in its Order dated September 27, 2019, the Court dismisses the second, third, and fifth causes of action for lack of subject-matter jurisdiction as a result of Plaintiff's failure to obtain a final decision.   Order at 12–13, 16–17.   The purported final actions—the Town Board's non-vote and the Town Attorney's non-response—remain without "citation to relevant binding precedent suggesting . . . [they] constitute[] a final decision."   *Id.* at 13; *see* Am. Compl. ¶¶ 67–69.   The absence of a final decision is also apparent from the "Article 78 proceeding pending in state court to compel Defendants to grant Plaintiff's application."   Order at 16.

Plaintiff devotes the bulk of its brief to the "two exceptions to the finality requirement," which would dispense with final-decision requirement altogether.   Pl. Recons. at 9, 11–15.   The Court addresses the exceptions in the context of Plaintiff's cross-motion to reargue.

## II.     Cross-Motion to Reargue the Court's September 27, 2019 Order

### A.     Legal Standards

Under Federal Rule of Civil Procedure 54(b), as well as its inherent power, a court may "reconsider a prior decision at any time before entry of final judgment." *Smith v. Town of Hempstead Dept. of Sanitation Sanitary Dist. No. 2*, 982 F. Supp. 2d 225, 230 (E.D.N.Y. 2013) (internal quotation marks omitted).  Rule 54(b) provides, in relevant part, that "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and responsibilities."  Fed. R. Civ. P. 54(b).

The standard for a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or [factual] data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (finding district court properly exercised its discretion to reconsider earlier ruling in light of the introduction of additional relevant case law and substantial legislative history); *see also Arum v. Miller*, 304 F. Supp. 2d 344, 347 (E.D.N.Y. 2003) ("To grant such a motion the Court must find that it overlooked matters or controlling decisions which, if considered by the Court, would have mandated a different result" (citation and internal quotation marks omitted)). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error

or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478). Thus, a "'party may not advance new facts, issues, or arguments not previously presented to the Court.'" *Nat'l Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 115 (2d Cir. 2001) (quoting *Polsby v. St. Martin's Press*, 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000)). A party may, however, introduce relevant authority that was not before the district court when it initially ruled on the matter. *See Vaughn v. Consumer Home Mortg. Co.*, 2007 WL 140956, at *6 (E.D.N.Y. Jan. 22, 2007). In the alternative, reconsideration is appropriate if a court "misinterpreted or misapplied" relevant case law in its original decision.

## B.    The Parties' Arguments

Plaintiff moves the Court to reconsider the Order in its entirety as a result of the Court's "fail[ure] to address the existence of two exceptions to the finality requirement set forth in *Williamson*." Pl. Recons. at 11–15. Plaintiff argues the Court overlooked that no final decision is necessary (1) where "a zoning agency . . . has dug in its heels and made clear" it will deny an application, or (2) a zoning agency imposes "repetitive or unfair land-use procedures in order to avoid a final decision." *Sherman v. Town of Chester*, 752 F.3d 554, 562 (2d Cir. 2014). Plaintiff further argues that "the Court misapprehended the test for standing under the [Fair Housing Act]" because "Second Circuit precedent does not require a final decision, only that Plaintiff has pleaded a concrete and redressable harm that is traceable to Defendants actions." Pl. Recons. at 19–20.

Defendants argue that the Court did not overlook any fact or legal precedent meriting reconsideration of its Order.  Further, Defendants contend that Plaintiff's current position reflects an about-face turn from its earlier view of Defendants' "final" action.  Def. Renewed Reply at 8–20 [ECF 46].  Defendants say the Court did not "misapprehend" Second Circuit precedent, which "does not stand for the proposition that a final decision is not required for standing under the Fair Housing Act." *Id.* at 20–22.  Defendants also reiterate their bases for dismissal of Counts One, Four, Six, and Seven under Rule 12(b)(6), which the Order did not reach following its subject-matter jurisdiction analysis.

### C.     Futility

#### 1.      Plaintiff Failed to Raise a Futility Argument

Upon re-review of Plaintiff's initial opposition brief, the Court finds that Plaintiff did not raise a futility argument.  *See* Pl. Opp. at 12.  Plaintiff casts its reargument papers as "simply elaborat[ing] on its previously raised argument by citing additional case law and providing a more thorough discussion of the futility exception," but the Court disagrees because there was no "previously raised argument."  *See* Pl. Recons. Reply at 4 [ECF 47].

Plaintiff's previously-cited "case law" was one case—*Sunrise Development Inc. v. Town of Huntington*, 62 F. Supp. 2d 762, 770 (E.D.N.Y. 1999)—which was cited solely to point out the existence of the futility exception.  Pl. Opp. at 12 (quoting *Sunrise Dev.*, 62 F. Supp. 2d at 770 ("[L]itigants are not required to engage in futile gestures to establish ripeness.") and *id.* ("[A]ny further efforts to work within administrative apparatus would be an exercise in futility.")); *see also* Pl. Recons.

Reply at 5.  Mere recitation of the futility standard does not aid the Court in its application to the facts at bar.  Further, *Sunrise Development* is not a case about the futility exception; it contains no more analysis on futility than does Plaintiff's initial briefing.  *Compare* 62 F. Supp. 2d at 770–71 (devoting two sentences to the futility exception), *with* Pl. Opp. at 12 (quoting those same two sentences).  The *Sunrise Development* court never reached the issue of futility because the defendants' actions were "*tantamount to a final denial* of the special use permit . . . caus[ing plaintiff] actual, concrete injury."  62 F. Supp. 2d at 771 (emphasis added).

Plaintiff's "discussion" is similarly conclusory.  *See* Pl. Opp. at 12.  The reargument papers compared to the initial papers reflect the dearth in treatment.  For example, the reargument papers catalogue nine-pages worth of futility-argument by comparing-and-contrasting the facts with those in *Sherman v. Town of Chester*, 752 F.3d 554, 562 (2d Cir. 2014).  *See* Pl. Recons. at 11–19.  But the initial papers cite *Sherman* once—for an inapposite proposition twenty-two pages after the futility "discussion."  *See* Pl. Opp. at 12, 34.  Unlike its reargument papers, Plaintiff's initial papers never identified *what* gestures would be futile, nor does it explain *why* such further efforts would be futile – despite Plaintiff's acknowledgment that "it is no simple task to distinguish procedures that are merely frustrating from those that are unfair or would be futile to pursue."  Pl. Recons. at 12 (quoting *Sherman*, 752 F.3d at 563); *see also* Pl. Recons. Reply at 5 (stating that such "substantial" factual support is found "in Plaintiff's opposition papers," *i.e.*, Pl. Recons. at 3–8).  Plaintiff's "discussion" summarily asserts that if the Town Board's non-vote and Town

Attorney's non-response are not final decisions, then they must suffice to meet Plaintiff's burden on futility. That argument is less "in the alternative" and more "heads I win, tails you lose."

In conclusion, nothing in Plaintiff's initial papers constitutes raising a developed futility argument. The term "futile," or some derivative thereof, appears only on one page: three times in the body and once in a footnote. Pl. Opp. at 12. The Court is not hyper-technical—there is no page-length or term-usage criteria for properly-raised arguments—but the abbreviated appearance evidences its short shrift. *See id.*

The Court nevertheless exercises its discretion to grant the motion for reconsideration on the issue of futility. *E.g.*, *Mangino v. Inc. Vill. of Patchogue*, 814 F. Supp. 2d 242, 247 (E.D.N.Y. 2011).[3]

---

[3]    While the failure to argue futility could serve as the Court's basis to deny reargument, *see Nat'l Union Fire Ins. Co.*, 265 F.3d at 115, Plaintiff's insistence that the current procedural posture "require[s] the Court to reconsider" the Order and analyze futility merits brief attention, Pl. Recons. Reply at 6.

The renewed motion to dismiss does not "entitle[]" Plaintiff to raise futility in the first instance; Plaintiff misunderstands the Court's direction for the renewed motion. *See* Pl. Recons. Reply at 6. The Order expressly raised a question of law necessary to determine its subject-matter jurisdiction: "whether a final decision is required to establish standing and ripeness for § 1981, § 1982, and NYHRL claims." Order at 26. The renewed motion is limited to that question. *Id.* Its answer does not turn on the facts of the case or on exceptions arising if the answer is "yes."

Plaintiff already had an opportunity to address the Court's subject-matter jurisdiction over the second, third, and fifth causes of action. *Compare* Pl. Recons. Reply at 6, *with* Pl. Opp. at 9–13 (arguing "the Court has subject-matter jurisdiction" for every claim). Merely because the Court posed a question about its subject-matter jurisdiction does not give Plaintiff carte blanche to raise new arguments in favor of such jurisdiction, *e.g.*, futility. Though a party may not waive or forfeit *challenges* to subject-matter jurisdiction, a party may waive or forfeit arguments *in support of* subject-matter jurisdiction. *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 809

n.6 (1986); *Sexual Minorities Uganda v. Lively*, 899 F.3d 24, 34 (1st Cir. 2018) ("Even though federal subject-matter jurisdiction cannot be established through waiver or estoppel, it may be defeated by waiver or estoppel.  For example, a federal court is not required to assume jurisdiction under a theory that a party has waived."); *U.S. ex rel. King v. Hillcrest Health Ctr., Inc.*, 264 F.3d 1271, 1279 (10th Cir. 2001) ("Grounds or arguments in support of subject matter jurisdiction may be waived like any other contention."); *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1207 n.16 (5th Cir. 1992) ("Because of our limited jurisdiction, we must always be vigilant to ensure that we have subject matter jurisdiction, addressing the issue *sua sponte* if need be.  But, this discipline is separate from our declining to address untimely raised legal theories in support of that jurisdiction."); *see* 13 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3522, at n.17 (3d ed. 2020); *see also Kontick v Ryan*, 540 U.S. 443, 455 (2004) ("A litigant generally may raise a court's *lack* of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance" (emphasis added)); *Lafalier v. State Farm Fire & Cas. Co.*, 391 Fed. App'x 732, 738 (10th Cir. 2010) ("[A]lthough the argument concerns subject matter jurisdiction, it remains waivable because it is an argument in support of, not a challenge to, jurisdiction.").

By analogy, the Second Circuit can refuse to consider arguments in favor of subject-matter jurisdiction that were not first raised in the district court.  *E.g.*, *Williams v. Romarm*, 751 Fed. App'x 20, 23 (2d Cir. 2018) ("[P]laintiffs also argue that subject matter jurisdiction exists under the first clause of the commercial-activity exception.  But that argument was not raised by the plaintiffs below in their opposition to Romarm's motion to dismiss and therefore was waived" (citation omitted)); *Larkins v. Garcia*, 379 Fed. App'x 17, 17 (2d Cir. 2010) ("[A]s Appellant did not raise before the district court the alleged violations of the constitution and federal criminal law that she argues on appeal, the district court had no cause to construe the complaint as raising constitutional claims" and thus "correctly concluded that it lacked subject matter jurisdiction."); *see also Morse v. Ozark Cnty., Mo.*, 609 Fed. App'x 359, 360–61 (8th Cir. 2015); *Barnard v. Century Enters., Inc.*, 89 F.3d 844, at *1 n.2 (9th Cir. 1996) ("[T]he Barnards advance several other reasons to support their contention that the district court had subject matter jurisdiction.  Because the Barnards did not raise these contentions in district court, they have waived them on appeal.").

Consider the plaintiff in *Giovanniello v. N.Y. Law Pub. Co.*, who moved for reconsideration of a court order dismissing his case for lack of subject-matter jurisdiction.  2007 WL 4320757, at *1 (S.D.N.Y. Dec. 11, 2007).  The plaintiff's reconsideration brief presented a novel "choice-of-law issue," which he asserted he was "entitled" to raise because the issue "concern[ed] th[e] Court's subject-matter jurisdiction."  *Id.*  The *Giovanniello* court did not agree that he was so entitled.  *Id.*  "The gravamen of the prior motion to dismiss *was* th[e] Court's subject-matter jurisdiction.  [Plaintiff] had a full and fair opportunity to raise the choice of law argument . . . but chose not to do so."  *Id.* (emphasis in original).  The same reasoning

## 2.    On Reconsideration, Plaintiff Fails to Plausibly Allege Futility

The Amended Complaint fails to meet futility's "high standard," which requires Defendants' actions to be "so unreasonable, duplicative, or unjust as to make the conduct farcical." *Sherman*, 752 F.3d at 563.  This is best seen by comparing *Sherman* with Plaintiff's case.

*Sherman* involved five zoning regulation changes, each mooting a proposal the plaintiff had recently submitted or was about to submit.  752 F.3d at 562.  The plaintiff faced retroactive six-month moratoriums on development that "applied only to [his] property," a one-year extension of one of those moratoriums, new and "openly hostile" officials, and "monthly lists of demands, which included" various repetitive and unnecessary studies.  *Id.* at 557–60.  He had to "answer all inquiries by local residents," with some answers repeated "twenty to forty times because the Planning Board did not permit him to quote a previous answer."  *Id.*  He had to pay $65,000 in fees before he could obtain a hearing.  *Id.*  His efforts lasted over a decade, forcing him "to spend over $5.5 million . . . [becoming] financially exhausted to the point of facing foreclosure and possible personal bankruptcy."  *Id.* at 563.  The Second Circuit held he adequately pled futility and he need not obtain a final decision.  *See id.*

---

operates here.  The Court's earlier Order squarely addresses the lack of subject-matter jurisdiction, which was the first issue raised in the parties' initial briefs.  *See* Order at 26; Def. Mem. at 12–19 [ECF 28-10]; Pl. Opp. at 9–15.  Plaintiff never used the opportunity to argue futility.  *See supra* Section II.C.1.

Assuming *arguendo* that Plaintiff did not waive his futility argument in favor of subject-matter jurisdiction, the Court still reaches the same conclusion and dismisses Plaintiff's case in its entirety.  *See* Section II.C.2.

By contrast, the only zoning change Plaintiff faced was negotiated in its favor, subject to accepting the C&Rs. Am. Compl. ¶¶ 1, 4. Plaintiff faced no moratoriums, no extensions of any moratoriums, nor monthly lists of demands. While Plaintiff did suffer an openly hostile public hearing and undertake repetitive studies, it was not asked to answer every resident's inquiries. *Id.* at 14–16[4]; *see also Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg*, 111 F. Supp. 3d 459, 479 (S.D.N.Y. 2015) ("Futility does not exist merely because public officials are hostile to the proposal at issue."). Plaintiff's efforts to modify the C&Rs spanned less than three years,[5] and no paragraph in Plaintiff's submissions specify the costs incurred to date.[6] *Id.* ¶¶ 43, 69.

Furthermore, futility requires Defendants' either to lack discretion to grant Plaintiff's application or to have "dug in its heels and *made clear* that all such applications will be denied." *Murphy*, 402 F.3d at 349 (emphasis added). Plaintiff admits "no vote was held" on the application but infers from that non-vote its denial.

---

[4]   The paragraph numbers repeat on page 15 of the Amended Complaint, so the Court prefers the clarity of page numbers for this citation.

[5]   The Complaint does not plausibly support including all "seven fruitless years [Plaintiff spent] trying to comply the C&Rs" as part of "Defendants' history of undermining any development." Pl. Recons. at 15, 18. The Complaint mentions "a difficulty in obtaining financing" which was "later exacerbated by the subsequent economic and housing market crash of the Great Recession in 2008." Am. Compl. ¶ 40. That is, at least part of the reason why the interval was fruitless cannot be attributed to Defendants. Plaintiff was also able to purchase one easement during that time, albeit not from Defendants. *Id.* ¶ 41.

[6]   Plaintiff alleges it suffered, continues to suffer, and will suffer in the future "more than $10 million economic losses." Am. Compl. ¶ 86. But the Complaint does not break down that figure into present and future losses, so the Court is unable to compare it, apples-to-apples, to *Sherman*'s figures.

Am. Compl. ¶ 63; Pl. Opp. at 12.  Likewise, Plaintiff interprets the Town Attorney's silence as confirmation of its belief.  But in the "absen[ce of] any citation to relevant binding authority suggesting" the Town Attorney speaks for the Town Board, the Board has not "made clear" its position.  *See* Order at 12–13.  Plaintiff thus has not demonstrated futility.

### D.    Fair Housing Act Standing

The Court denies reconsideration of its holding that Plaintiff lacks standing on his FHA claims.  Order at 16 ("Plaintiff does not have standing to bring its FHA claim because there is no final decision and accordingly no injury.").  Plaintiff argues the Court erred because "Second Circuit precedent does not require a final decision, only that Plaintiff has pleaded a concrete and redressable harm that is traceable to the defendants."  Pl. Recons. at 20.  The Court does not share Plaintiff's reading of *Mhany Management, Inc. v. County of Nassau*, 819 F.3d 581 (2d Cir. 2016).  Without a final decision, Plaintiff has not suffered a "concrete" harm.

To begin, even though the Second Circuit may not have yet decided whether the final-decision requirement applies to FHA claims, its inaction should not be interpreted as a repudiation of the requirement.  The Court adheres to the reasoning in its Order—and that of the lower courts in the Second Circuit and the other Circuits—which require FHA claims to satisfy the final-decision requirement.  *See* Order at 14–15; *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, 607–10 (S.D.N.Y. 2013) (citing cases).

The Second Circuit in *Mhany Mgmt.* observed, "Standing under the Fair Housing Act is as broad as Article III permits." 891 F.3d at 600. The Article III standing elements are (1) an injury-in-fact, (2) traceability, and (3) redressability. *John*, 858 F.3d at 736 (citing *Lujan*, 504 U.S. at 560–61). *Mhany Mgmt.*'s standing analysis expressly concerns "*the latter two prongs*": traceability and redressability. 819 F.3d at 600 (emphasis added). The finality requirement, however, arises from ripeness concerns, *Williamson*, 473 U.S. at 186–94, and ripeness is "a specific application of the actual injury aspect of Article III standing," also known as "the *first Lujan* factor," *Nat'l Org. for Marriage, Inc.*, 714 F.3d at 688 (emphasis added). "In other words, a non-final decision . . . does not ordinarily give rise to an injury that is sufficiently concrete and particularized to satisfy Article III," *i.e.*, the first prong of the standing analysis. *Sunrise Detox*, 679 F.2d at 122. In concerning itself solely with the second and third prongs, *Mhany Mgmt.* therefore says nothing on the first prong, from where the finality requirement originates. *See* 819 F.3d at 600–03. When the *Mhany Mgmt.* court upheld the plaintiff's standing, it gave no occasion to read into the decision an unwritten overturning of the injury-in-fact prong or, by consequence, the final decision requirement. *See* 819 F.3d at 600–03. In fact, this Court understands the *Mhany Mgmt.* plaintiff to have received a final decision. *See* Order at 16. The Court thus finds no reason to reconsider its analysis of *Mhany Mgmt.* or Plaintiff's lack of standing for its FHA claims. *See id.*

## CONCLUSION

For the reasons discussed above, Defendants' renewed motion to dismiss is GRANTED, and Plaintiff's motion to reargue the Court's order is GRANTED with respect to the futility exception but DENIED with respect to standing for Fair Housing Act claims.   On reconsideration, Defendants' motion to dismiss is GRANTED.  This Court has now dismissed all seven causes of action.  The Clerk of Court is directed to terminate the action.

**SO ORDERED.**

Dated: Central Islip, New York
      January 22, 2021

s/ Denis R. Hurley
Denis R. Hurley
United States District Judge